IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| NATIONWIDE ADVANTAGE MORTGAGE COMPANY,<br><br>Plaintiff,<br><br>vs.<br><br>MIDCOUNTRY BANK,<br><br>Defendant. | )<br>)<br>)<br>)<br>)  Case No. 14-CV-1270-SMY-RJD<br>)<br>)<br>)<br>)<br>) |

## MEMORANDUM AND ORDER

Before the Court are Plaintiff Nationwide Advantage Mortgage Company's ("NAMC") and Defendant MidCountry Bank's ("MidCountry") cross motions for summary judgment (Docs. 41 and 47). For the following reasons, NAMC's motion is **GRANTED** and MidCountry's motion is **DENIED**.

### Background

Between December 2006 and January 2007, NAMC and MidCountry entered into a Correspondent Lender Purchase Agreement ("CLPA") pursuant to which MidCountry would make mortgage loans to third parties and offer some of these loans for sale to NAMC (Doc. 2-1). NAMC is a wholesale mortgage lender that purchases loans from banks such as MidCountry and subsequently sells them on the secondary mortgage loan market to entities such as the Federal National Mortgage Association ("Fannie Mae") (Doc. 41 p. 2). The CPLA provides that MidCountry will comply with all applicable Investor Guidelines (Doc. 2-1 p. 8). The CPLA also provides that MidCountry is obligated to indemnify and hold NAMC harmless from any claims and losses arising from any act or omission of MidCountry, including losses associated with breaching any provision of the CLPA (Doc. 2-1 p. 9).

In April 2008, MidCountry underwrote and closed a mortgage loan in the principal amount of $346,500 with Daniel and Janelle Schmitz ("Borrowers") (Doc. 44 p. 5). MidCountry sold the mortgage loan to NAMC that same month (Doc. 41 p. 3). NAMC then sold the mortgage loan to Fannie Mae in early June, 2008 (Doc. 41 p. 4). The borrowers subsequently defaulted on the loan and Fannie Mae undertook a loss mitigation review (Doc. 44 p. 5-6). At some point during the loss mitigation review, the borrowers were permitted to sell the property at a short sale (Doc. 41-1 paragraph 24).

On November 8, 2013, Fannie Mae demanded that NAMC reimburse it for the mortgage loan because Fannie Mae's loss mitigation review found that the appraisal commissioned by MidCountry did not adequately support a property value of $387,000 and that the appraiser utilized unacceptable appraisal practices that violated their investor guidelines (Doc. 44 p. 5). NAMC sent MidCountry a copy of Fannie Mae's reimbursement demand on November 13, 2013 (Doc. 41-1 paragraph 26).

NAMC and MidCountry jointly appealed Fannie Mae's reimbursement demand. However, on March 6, 2014, Fannie Mae rejected the final appeal, finding that MidCountry's appraisal was deficient and violated Fannie Mae's investor guidelines (Doc. 41-2 p. 60). Pursuant to its agreement with Fannie Mae, NAMC reimbursed Fannie Mae $171,454.82 for the mortgage loan (Doc. 41 p. 6). NAMC then demanded that MidCountry indemnify it for the losses resulting from the mortgage loan pursuant to the CLPA. Id.

NAMC alleges that MidCountry breached the CLPA by selling a mortgage loan to NAMC that did not comply with Fannie Mae's Investor Guidelines and by failing to indemnify NAMC after it was required to reimburse Fannie Mae for the deficient mortgage loan. NAMC is seeking $176,912.20 in damages. MidCountry asserts that the loan complied with Fannie Mae's Investor Guidelines, that NAMC's remedies are limited to cure and/or repurchase and that the

contractual statute of limitations has run.

## Discussion

Summary judgment is appropriate if the "movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden is on the moving party to show that there is no genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986). "The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [their] favor." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255, 106 S. Ct. 2505, 2513, 91 L. Ed. 2d 202 (1986).

In diversity cases, federal courts apply the substantive law of the forum state, including that state's choice of law rules. Kalmich v. Bruno, 553 F.2d 549, 552 (7th Cir. 1977). In Illinois, a contractual choice of law clause will be enforced as long as the contract is valid. Kohler v. Leslie Hindman, Inc., 80 F.3d 1181, 1185 (7th Cir. 1996). Here, both parties agree to the validity of the contract which states that the ". . . Agreement will be governed by the law of the State of Iowa . . ." (Doc. 2-1 p. 12). Iowa law will therefore be applied to all substantive aspects of this case.

### *Statute of Limitations*

Under Iowa law, parties may contractually agree to a modification of the statute of limitations. Robinson v. Allied Prop. & Cas. Ins. Co., 816 N.W.2d 398, 402 (Iowa 2012). Here, the parties contractually agreed that a three year statute of limitations applies to any claim arising under the contract with the exception of paragraphs 9, 10, and 11 (Doc. 2-1 p. 12). More specifically, the contract states, "[t]he three year limitations period in this [contract] shall not apply to any action, suit, proceeding at law or in equity, **which relates to** . . . Section 10," (emphasis added). Presumably, Iowa's standard ten year statute of limitations for claims under

written contracts applies to the exempted paragraphs. Robinson, 816 N.W.2d at 402.

MidCountry argues that the section 10 exemption should not apply and that the three year modified limitation provision of the contract bars the entire claim because "NAMC cannot establish as a matter of law that MidCountry violated Paragraph 10(h)[.]" (Doc. 47 p. 7). That, however, is as far as MidCountry goes in explaining why the Section 10 exemption should not apply in this case. There is no requirement in the contract that NAMC establish "as a matter of law" that MidCountry breached section 10. Based on the plain language of the contract, there is only the requirement -- that the suit "relate[s] to" section 10.

There can be no question but that this suit "relates to" section 10 of the contract. NAMC alleges in the Complaint that MidCountry failed to conduct its business in compliance with Fannie Mae's Investor Guidelines, as required by paragraph 10(h). As such, the three year modified statute of limitations does not apply to NAMC's breach of contract claim. Moreover, under Iowa law, "no cause of action accrues . . . until the wrongful act produces loss or damage to the claimant." Bob McKiness Excavating & Grading, Inc. v. Morton Bldgs., Inc., 507 N.W.2d 405, 408 (Iowa 1993); Weinhold v. Wolff, 555 N.W.2d 454, 464 (Iowa 1996).

MidCountry argues that the claim accrued in 2009 when Fannie Mae approved the short sale during the loss mitigation review. In support of its argument, MidCountry relies on the deposition testimony of Adam Styers, NAMC's repurchase expert and records custodian. Mr. Styers testified that NAMC knew there was going to be a loss on the loan when the short sale was approved (Doc. 44 p. 15). However, the claim accrues when the wrongful act *produces* a loss, not when one knows there is going to be a loss. Here, there remained the possibility that Fannie Mae would rescind its reimbursement demand based on a successful appeal and that NAMC would not have suffered any loss. Even if the three year statute of limitations applied, the cause of action did not accrue until March 6, 2014, when Fannie Mae rejected the final

4

appeal and NAMC became contractually obligated to reimburse Fannie Mae. Accordingly, the claims are not barred by the statute of limitations.

### *Breach of Contract*

To prevail on a breach of contract claim under Iowa law, NAMC must prove: "(1) the existence of a contract, (2) the terms and conditions of the contract, (3) that [NAMC] has performed all the terms and conditions required under the contract, (4) that [MidCountry] breached the contract in some particular way, and (5) that [NAMC] has suffered damages as a result of MidCountry's breach." Molo Oil Co. v. River City Ford Truck Sales, Inc., 578 N.W.2d 222, 224 (Iowa, 1998). The existence of a contract is undisputed in this case.

NAMC asserts that MidCountry breached paragraphs 10(h) and 12 of the CLPA as well as paragraph 2 of the addendum. Paragraph 10(h) requires MidCountry to "conduct[] its business in compliance with . . . [Fannie Mae's Investor Guidelines]" (Doc. 2-1 p. 8). NAMC argues that MidCountry "failed to properly underwrite the Mortgage Loan as independently determined by the drafter of the guidelines themselves, Fannie Mae, and after an appeal process." (Doc. 41 p. 12).

NAMC has produced correspondence and documentation from Fannie Mae stating that the underwriting process, which MidCountry conducted, was deficient because the appraisal value was inflated and that Fannie Mae was entitled to reimbursement from NAMC due to the deficiency. NAMC maintains that Fannie Mae's determination that MidCountry failed to comply with Fannie Mae's Investor Guidelines establishes MidCountry's breach of paragraph 10(h) as a matter of law -- "Who, after all, is more qualified than Fannie Mae to judge whether a violation of its own [Investor Guidelines] had occurred." (Doc. 41 p. 10). MidCountry denies that their underwriting process failed to comply with Fannie Mae's Investor Guidelines and has produced subsequent appraisals of the property which suggest that the value of the property at

the time of the original appraisal was accurate and not inflated. (Doc. 44 pp. 9-10).

Viewing the competing evidence in a light most favorable to the nonmoving party, MidCountry, no genuine issue of material fact exists as to whether MidCountry failed to comply with Fannie Mae's Investor Guidelines. Under NAMC's Agreement with Fannie Mae, Fannie Mae had exclusive authority to determine whether their investor guidelines were complied with and neither MidCountry nor NMAC was entitled to an independent adjudication as to compliance. Thus, once Fannie Mae made the final determination that MidCountry failed to comply with the investor guidelines, MidCountry's breach of paragraph 10(h) was established as a matter of law, notwithstanding the subsequent appraisals submitted by MidCountry.

The Court further finds, as a matter of law, that MidCountry also breached paragraph 12 of the CLPA which provides: "[MidCountry] hereby indemnifies . . . NAMC . . . from any and all claims, losses, costs, and expenses . . . which the indemnified party may incur, and which arise from any action or omission of [MidCountry], including without limitation, any claims, losses, costs and expenses arising out of . . . a breach of any provision of this Agreement[.]" (Doc. 2-1 p. 9). NAMC clearly suffered a loss when it had to reimburse Fannie Mae. That loss was explicitly due to an action or omission of MidCountry -- the deficient appraisal. NAMC was therefore entitled to indemnification and made multiple unsuccessful demands for such (Doc. 41-2 p. 8). When MidCountry failed to indemnify NAMC, they breached paragraph 12 of CLPA.

*Remedies*

Paragraph 2 of the addendum requires MidCountry to "repurchase" any mortgage loan from NAMC "[i]n the event that NAMC is required to repurchase any Mortgage Loan sold by [MidCountry] pursuant to the [CLPA] as the result of any established agency or investor rule published in [Fannie Mae's Investor Guidelines.]" (Doc. 2-2 p. 1). The term "repurchase" is not defined in either the contract or the addendum.

MidCountry contends that the term "repurchase" is strictly construed in this context to mean buying back the actual mortgage loan and that no remedy is available to NAMC because it authorized a short sale of the property to mitigate its losses and, therefore, there was no mortgage or property to "repurchase." In support of its contention, MidCountry cites the deposition testimony of Karen Romine, manager of quality control and compliance with NAMC. Mrs. Romine opined that "repurchase" requires that the property still be "current or active[,]" i.e., that there is an actual mortgage to buy. (Doc. 44-1 p. 37).

NAMC argues that the term "'repurchase,' as used in the mortgage loan industry, is synonymous with indemnification and does not strictly refer to the actual repurchase of a mortgage loan or note. It points to the correspondence from Fannie Mae to NAMC which demanded "reimbursement" for the loss and the deposition testimony of Adam Styers, repurchase expert and records custodian for NAMC that "repurchase" can be used synonymously with "indemnification" and "reimbursement" within the industry. (Doc. 44-1 p. 19).

Whether the term "repurchase" refers to buying back a mortgage or simply reimbursing or indemnifying for a loss is inconsequential as it is not the sole remedy available to NAMC. Even if the Court were to adopt MidCountry's position, NAMC's remedies are not limited to repurchase or cure under paragraph 2 of the addendum, as MidCountry argues. Paragraph 8(b) of the CLPA makes it clear that the remedies of repurchase and cure are "[i]n addition to the other rights and remedies that NAMC may have[.]" (Doc. 2-1 p. 5). Therefore, under paragraph 12, NAMC is entitled to indemnification for all losses and costs, including attorney's fees, for MidCountry's breach of paragraph 10(h).

For the foregoing reasons, Plaintiff Nationwide Advantage Mortgage Company's Motion for Summary Judgment is granted. Plaintiff is AWARDED damages in the amount of $176,912.20 plus prejudgment interest from November 13, 2014 until the date of judgment is

entered; plus attorney fees and costs to be determined upon Plaintiff's filing of a Petition for the same.  Defendant MidCountry Bank's Motion for Summary Judgment is denied in its entirety.

**IT IS SO ORDERED.**

**DATED:  December 30, 2016**

<u>**s/ Staci M. Yandle**</u>
**STACI M. YANDLE**
**United States District Judge**